United States v. Orduno-Ramirez, number 223019. Counsel, you may proceed. Good morning, your honors. I'm Paige Nichols with the Federal Public Defender for the District of Kansas. Our client is Mr. Orduno-Ramirez, the appellant. May it please the court. In Schillinger v. Hayworth, this court recognized that the confidentiality of attorney-client communications is at the center of the protections afforded by the Sixth Amendment. Our communications with our clients are indeed sacrosanct. They do partake of that inviolable character of the confession. What communications were heard here? The communications at issue in this particular case are physical communications that are visible during a video recording of attorney-client meetings, five attorney-client meetings at the detention center. Wasn't there a purpose to that recording to see if people were smuggling things into the prison? There may have been a law enforcement purpose for observing the attorney-client. So there's no sound or anything on this particular recording? There's no sound on this particular recording. And the fact that there's no sound on this particular recording is not at issue in this appeal because this appeal is purely about the question of whether Schillinger's presumption of prejudice applies at the sentencing phase. If it doesn't, what is your situation then? If it doesn't apply, at this point in this case, we have not offered any actual evidence of prejudice. So we are reliant on the presumption, which is why the motion was dismissed. If the presumption is granted, what is the remedy in this situation? Well, the remedy might... We've asked for a range of remedies and the remedy under... Well, give me an example. Oh, a reduction of sentence is something specifically that we asked for that the government has agreed to in some of the other cases arising from this litigation. I'm sorry. I'm sorry. We have asked... One of the remedies we requested was a reduction of sentence, which is... And what would be the purpose of that? The purpose of that would be to grant some form of a remedy for the government's breach of the Sixth Amendment right to confidential communications. And the... Now, that's only if the Schillinger... Correct. ...applies. Correct. And so what the court recognized and held in Schillinger is that only some prosecutorial breaches of confidentiality are presumptively prejudicial and per se violate the Sixth Amendment. And I want to emphasize that. Only some breaches, right? Not all are going to trigger Schillinger's per se rule. That rule is only triggered by especially pernicious breaches where the prosecutor intentionally and with no law enforcement justification became privy to confidential attorney-client communications. Well, counsel, let me jump in there. First of all, in determining whether to extend Schillinger's presumption to the situation we have here, which is the pre-sentencing intrusion situation, is it relevant in deciding whether to extend Schillinger that what happened here occurred in the context of many other intrusions? In other words, do we look at the whole context of what happened in this situation? It wasn't a one-time deal. This was done, as we know from the record and the opinions, that there was some systemic nature to this. Is that relevant to our legal analysis on whether to extend the Schillinger presumption? It's relevant to help the court understand why the presumption may be necessary. It's not a circumstance that any litigant would need to show to trigger the presumption, but it's just part of the... Well, let me put it another way. If we were to extend the presumption in this case, could our holding, at least until future cases come around the corner, be limited in part because of the context in which this particular intrusion occurred? It could be, and because this is the only case that's before this court, I understand that would certainly make sense. What it does is it explains why, I mean, what happened in this case, in the history of this case, helps explain why the rationale of Schillinger should apply to sentencing because of the difficulty, the unworkability of requiring proof of prejudice because of what happened in this case. And I'm not sure, Judge Phillips, that I finished answering to your satisfaction some of the fact that this case involves videos, and I wanted to check in. Well, I want to get back to that, too, but related to this, if we extend Schillinger's presumption of prejudice to these post-plea intrusions, why shouldn't we hold that the presumption is rebuttable? For the same reasons that the presumption needs to apply, because the information... Well, the presumptions are often rebuttable. They are. I mean, in a way, the word presume implies that it can be rebutted. Now, I know in Schillinger it's, in a way, say, you know, a per se presumption, but I guess I understand what that means, but why not make it rebuttable? I know that the court didn't do it in Schillinger, but we're in a different context now, and you argue that extending Schillinger accounts for the difficulty of proving prejudice when the government possesses the proof. Well, if that's so, why doesn't the government's possession of the proof point to making the presumption rebuttable? In other words, you get the benefit of the presumption, but the government can come back and say, well, it happened, but no prejudice, and we have the facts to show that. Why isn't that a better rule than a per se rule? For the same reason that the Supreme Court has adopted per se rules in other contexts. The Garza v. Idaho case is a good example of a place where you have the rule that if counsel fails to consult with the client or advise and, excuse me, file a notice of appeal when requested, you're going to have per se prejudice to the appeal without asking, even in the case, like in Garza, where you're an appeal waiver. You're not even arguing on appeal that there was prejudice. Right. And if the presumption is per se and there isn't any prejudice, it may be that the defendant should get the presumption. But if there really is no prejudice, is that a proper result? Isn't that a bit of a windfall? It's not at all a windfall. Why not? There's no prejudice. I'm asking you to assume no prejudice whatsoever. It happened. It shouldn't have happened. You get the presumption, but the government can show no prejudice. Why isn't that the right way to do this? Well, that's where we look at Morrison, which was a case exactly about remedy and what's an appropriate remedy. For each violation, the district court will have to decide what's the appropriate remedy in that case. And in doing that, Morrison tells us that the court can look at systemic violations, and that's when the remedy— No, I'm not asking Judge Kelly's question about remedy. I'm just asking about how the rules should be constructed. It should be exactly— By the way, you didn't address this new to the government, but I'm asking. So I want to make sure I'm answering the right question. It's very straightforward. If we recognize the presumption, but we want to say—we're not going to say per se. We're going to say, the defendant, you get the benefit of the presumption because there's been an intrusion here. But we're not going to automatically say that rights have been violated because we're going to give the government a chance to say there wasn't any prejudice. Why isn't that a fair balance of interests? It might be a fair balance of interests where the government hasn't committed this particularly pernicious breach that triggers Schillinger's presumption in the first place. Remember, we're talking about— Okay, so now we're back to the systemic violation. Well, no— Which you said is only to give us some sense of what happened. Those are kind of two separate things in my mind, the systemic violation and what we saw here with the cover-up and so forth. But the particularly pernicious breach is the thing that Schillinger described. Intentional, without a law enforcement justification, becoming privy to confidential communications. So that right there is a special kind of breach. It's a much more serious breach than, for instance, in Weatherford, where there was a law enforcement justification, where there wasn't privy to. So you're already at the point where you have, whether you've got a systemic problem or not, if you've satisfied Schillinger's other elements, we're already at a point where we have a bad-acting prosecutor. And so for them to have the opportunity to show, but it's okay, I tried, but nothing came out of it, seems contrary to the whole deterrent aspect of Schillinger and the need that we've seen over the last six and a half years of litigation in Kansas. If they've taught us anything, it's that the prosecutors need more, not less deterrents when it comes to their collection of attorney-client communications. Isn't there a huge difference between the pre-sentencing proceedings, the trial, and after the conviction? We're now in a very confined situation with the, there's just no, there's no danger as there would have been in the true pre-trial facts. So as we try to explain in our brief, the sentencing proceeding is often just as adversarial. Sometimes it's the only adversarial proceeding there is, but it has, it's just as adversarial as trial. Well, not hardly. I mean, the judge is there, he's doing it. You can put in a pre-sentencing memo, you can argue about what the facts are, but it's not anywhere like the pre-trial proceedings. Well, we have some trials that are more adversarial than others. We have some sentencings that are more adversarial than others. Some trials go on stipulated facts. Not this one. The defendant did very nicely at sentencing here with the downward variance and the government not pursuing a role adjustment and so forth and so on. So as far as something that shocks us, you don't have that. We do have guidelines that were controverted and variances always start from the guideline that the court settles on. But the point is when, again, I want to keep emphasizing that that presumption we're asking the court to apply to sentencing, it's only triggered once the prosecutor has taken several steps towards taking and using, trying, accessing the defendant's confidential communications. And if they've gone that far, we can presume that they have some ill purpose in going forward with it. Well, maybe if they had just sought this information with this defendant, then they're zeroed in on it and they wouldn't have sought it otherwise. But this was a result of a mass request, right? Right. It was a mass request that the prosecutor knew would bring in attorney-client phone calls. When she got them, she knew she had attorney-client phone calls because the index said so. She retained those attorney-client phone, not phone calls, videos. She retained those videos and used them to the detriment of a defendant in the Dertinger case. So we've got, and then lied about it to the district court in her office, all rallying behind her to a certain point, and tried to, as the district court could, delay, diffuse, and deflect all of this information. I would like to, if I can, save some time for rebuttal. Can I just ask you one question, which is, what's the significance of his not seeking to withdraw his plea after he heard about this? And of course, the government didn't have it until after his plea. I don't think there's any in this appeal. And it was some time before a lot of this shook out in terms of knowing who had what. And I don't have that chronology in my mind right away. But I don't think it's relevant to the appeal, at least. Thank you very much. Thank you. Thank you, counsel. Counsel. Good morning, Your Honors. Assistant United States Attorney Brian Clark for the United States. May it please the Court. Under Weatherford v. Bercy, we know that there can be no Sixth Amendment violation in this case without at least a realistic possibility of prejudice. And here, the district court found that she could not even imagine any realistic possibility of prejudice under the circumstances of this case. She specifically found that Mr. Eugenio Ramirez's sentencing proceeding bore no indicia of a reasoned advocate for the government and not an antagonist that was leveraging inside information. And so the district court... The district court avoids the issue. I mean, you've gone to the facts and there was no prejudice. But should Schillinger be expanded to cover the sentencing procedures? To answer your question directly, no. Schillinger should not be extended to the sentencing context. And the district court gave several good reasons for why not. And you mentioned a couple of them. For one, the sentencing context is simply a different context with different fairness concerns and different procedures that are in play than in the trial context. And some of the examples that the district court gave were, for example, the difference in the balance of power among the prosecutor, defense counsel, and the court. The fact that the sentencing court drives the sentencing procedure, that the baseline for the defendant's sentence is provided by a probation officer who, as this court said in Gordon, is an agent of the court that is a neutral fact finder. And then the parties have an opportunity to object. All of those objections are in writing. In this case, the prosecutor did not file any objections to the PSR. The defendant did and the government responded. All of that is in writing on the public docket. And as the district court concluded, that sentencing, not only is it less likely that a defendant would be prejudiced by an intrusion, but any prejudice that might be discernible would be quantifiable in a way that is not so quantifiable in the trial context. Why is that, though? You say any prejudice that might be discernible. Why would it be any easier to detect prejudice for intrusions that occur after a plea than those that occur for those before a plea? It's still hard, isn't it, to detect prejudice? Well, it may be difficult. Sometimes detecting prejudice is difficult and sometimes it isn't. I think it's more difficult in the trial context because, for example, if a prosecutor were to obtain confidential attorney-client communications in the investigation phase, those communications could be used in any number of ways and, as the district court said, could be pervasive and nebulous effect on the ultimate proceeding. It sounds, though, like it's sort of a matter of degree. This argument still seems a bit imprecise in the sense that, well, maybe it's harder in the trial context than the sentencing context, but it's just a little less hard and that's enough not to extend Schillinger. Is there more to it? I think that's basically right and the force of that argument comes in how high the standard has to be in order to presume prejudice in the first place. Well, OK. But the other argument is deterrence. And why doesn't the deterrence argument apply in this context? The deterrence argument does not apply in this context because the Sixth Amendment's focus and the right to the effective assistance of counsel is not on deterrence. Well, the Sixth Amendment cases recognize sentencing as a critical stage, so we do have Sixth Amendment concerns about what happens in sentencing. So, again, maybe just to build on the question, given what happened in this case, not just with respect to this particular defendant, but the fact that this was a systemic surveillance and intrusion situation, why wouldn't the deterrence rationale really point to extending Schillinger in some manner? So, two main points on that. With respect to the Sixth Amendment, I just want to make clear that the government agrees that the Sixth Amendment right to the effective assistance of counsel obviously applies at sentencing. It is a critical stage. There's no doubt about that. However, what the Supreme Court said in Strickland and Cronick, specifically footnote 31 of the purpose of the effective assistance of counsel is not to deter government misconduct, but rather to ensure that the defendant receives a fair criminal proceeding. And that is why the prejudice element is there in the ineffective assistance of counsel context. To begin with, it's to ask whether the defendant received a fair proceeding. Here, the district court found that there was no imaginable realistic possibility of prejudice under the facts of this case. And I would just note that that finding is a factual finding that is effectively unreviewable by this court because the finding was based on the district court's review of the soundless video recordings, which are not in the record on here. Counsel, let me just jump in there. Would it have been difficult for you, or was it difficult for you? In the district court to show that the intrusion here did not prejudice this defendant? No, because well, if that's true, what would be wrong with what I suggested earlier to a rebuttable presumption of prejudice rule? If you can show no prejudice, why not have a rebuttable presumption that responds to the deterrence and the difficulty in detecting prejudice? But then you can come back and say, well, but there was no prejudice here. Two points on that. I want to directly respond first. And that is to say, if this court decides to extend some kind of presumption of prejudice to sentencing, and that's a given, then certainly a rebuttable presumption would be much better than a true Schillinger-type presumption. I had a feeling you might prefer that. So that would be preferred. However, in our view, any sort of presumption would cut broader than what the Sixth Amendment requires, which is for the defendant to show at least a realistic possibility of prejudice. And for there to be a realistic possibility of prejudice, Weatherford said the defendant would need to show a couple of things. It gave some examples. For example, that the proceeding was tainted by tainted evidence. That is, evidence that was somehow obtained from the intrusion. And the second is that there was some kind of communication of defense strategy to the prosecution. Neither of those is present in this case. And I think it's important to come back to your point, Judge Matheson, about a systemic intrusion. Actually, the intrusion at issue in this case was a single intrusion. It was one grand jury subpoena that was issued to the pretrial detention facility for all of the videos. It wasn't targeted at this particular defendant's attorney-client meetings. It wasn't targeted at any particular, any attorney-client meetings at all. Instead, it was issued in order to investigate widespread contraband smuggling at that facility. And with respect to— You know, I had a question for you about that very last point. Okay. Because you mentioned that in your brief. Are you contending the intrusions here were done for a legitimate justification? Yes. And so are you contending that nothing improper happened? No. As we say in the brief, the breadth of the subpoena was regrettable. And the idea for it, ill-conceived, it should have been narrower, especially in hindsight. But there was no— In Weatherford, the purposeful intrusion is described as a targeted and intentional obtaining of confidential attorney-client communications. That was not the intent in issuing that subpoena. And there's no evidence in the record that that ever happened. I want to make two points about— How do you say that? Why else would the information be sought? Why would you want a phone recording between counsel and client, except to listen to the recording and find something? Well, so respectfully, this case does not involve phone calls. I understand that. But we're talking broader. I thought we were talking more broadly about this whole endeavor. Okay. Whether you had regrets or whether it raised constitutional violations. And your end answer was, I took it. No big deal. Well, I think more broadly that certainly lessons have been learned in the U.S. Attorney's Office for the District of Kansas. As the District Court found, there was a May 2017 policy adopted by the USAO, which the District Court found was largely curative of the issues that were discovered in Black. It's a comprehensive policy dealing with the respect for attorney-client communications. And so certainly through the process of litigating these cases, lessons have been learned and things could have been done differently. But with respect to the narrow Sixth Amendment question that's before this Court, that doesn't provide a basis for extending Shillinger's presumption of prejudice to the sentencing context. It simply doesn't. And in the very District Court, who was very skeptical of the government's position throughout this litigation, said very plainly and found squarely that there was no realistic possibility of prejudice in this case. And I'd like to just note that Ms. Nichols refers to the prosecutor. But I want to be very clear that the prosecutor in this case was not the prosecutor who requested the video recordings in the first place. And the prosecutor in this case swore an affidavit stating that he was not aware at the time of Mr. Orduno Ramirez's sentencing that there were soundless video recordings of his meetings with his attorney. And I think the specific facts of this case are really important. And that's why I began with them. And Judge Mathison, if you're looking for a narrower way to resolve the case, the facts of this case provide them in spades. Because in this case, you have a factual finding that there was no realistic possibility of prejudice. And so what Mr. Orduno Ramirez is asking this court to do is to substitute the District Court's findings, which he has not challenged, with a legal presumption that would presume the very prejudice that the District Court found was unimaginable. That is the definition of a presumption that, as Weatherford said it, would cut much too broadly. And Weatherford, the Supreme Court, rejected the Fourth Circuit's per se rule, which is very similar to Schillinger's per se rule, because it cut much too broadly. And the reason it said that was because it would allow a defendant to vacate his conviction, or in this case, vacate his sentence, without any showing of a Sixth Amendment violation in the first place. And so imposing a presumption in this case  which the District Court has already found for no indicia of a tainted proceeding would go far beyond what the Sixth Amendment requires. And with respect to remedy, this court asked about whether the allegations regarding systemic violations should come into play. And what Morrison said was that the general rule of crafting a remedy applies in these types of cases. So even where there is a purposeful government intrusion, as there was in Morrison, when it comes to remedy, the question is, was there any taint? And then if there was taint in the proceeding, to tailor a remedy that is focused on neutralizing that taint. Here, there is no taint to neutralize, just as in Morrison. And what the Supreme Court ended up doing in Morrison was affirming the defendant's conviction because there was no taint to neutralize. Here, the government is asking this court to affirm the denial of Mr. Ordillo Ramirez's 2255 motion, because number one, there was no Sixth Amendment violation. That's rooted in the District Court's findings. There was no realistic possibility of prejudice under Weatherford. And there's no basis for remedy under Morrison. And then with respect, backing up to the broader question of whether Schillinger's presumption of prejudice should be extended to the sentencing context. I think this case is the poster child for why the answer has to be no. Judge Phillips, as you were pointing out, in this case, Mr. Ordillo Ramirez did very well at sentencing. But whether he did well or not, what is more important is how the District Court went about fashioning and determining that sentence. The District Court very carefully reviewed the record. Judge Robinson balanced Mr. Ordillo Ramirez's role, multiple roles, in a wide-ranging drug conspiracy. And then she balanced that against extenuating family circumstances. The fact that Mr. Ordillo Ramirez's wife had recently passed away due to cancer. The fact that he had a child who was a minor. And she granted a 44-month downward variance because she was balancing those factors. And she wanted to give Mr. Ordillo Ramirez an opportunity to be released while his child was still a minor. That is the picture of the District Court driving the sentencing inquiry and basing a sentence on her own instincts and what she thought was sufficient but not greater than necessary to effectuate the purposes of the statutory sentencing factors. Which really neutralizes or mitigates the possibility of prejudice. I see my time has expired. We would ask the Court to affirm. Thank you. Thank you, Counsel. And I have some rebuttal time. It's not true that the only prosecutor on this case was not the prosecutor who collected the videos from the prison. Erin Tomasek collected the videos from the prison. David Zabel is the prosecutor who litigated sentencing. But Tomasek and Zabel were together on this case. She did not withdraw until she had had those videos in her possession for some period of time before sentencing. Zabel and Tomasek were together on the Herrera-Zamora case. A case that the government ultimately agreed to a remedy of time served on because of similar problems with phone calls. And in the Carter ruling that... Am I over or under? It didn't get reset. I'm sorry. Okay. Judge Robinson found Zabel's denial that he knew what Tomasek was up to found his credibility lacking. So if the specific facts are really important here, then this court needs to know that those two prosecutors who were the reason that there was a remedy given in Herrera-Zamora worked together on Mr. Orduno Ramirez's case. It's not that important, though really it's important for this court to know to understand how the government continues to downplay what happened here. Confidentiality is a special root value of our adversarial criminal justice system. It can't function properly without it. We have learned over the last six and a half years, we need strong medicine here. We ask this court to apply the presumption of prejudice in the sentencing phase. What if the... I assume you don't have an objection to the camera monitoring what's going on in the interview room and that sometimes defendants attack defense counsel. Is that right? I think that's right. The monitoring, I don't think we've ever made an objection to. Recording, we have serious questions about. But what the district court has found is that the lack of a legitimate law enforcement justification applies to them becoming privy to. So even if they had, which we know they didn't, a justification for collecting attorney-client videos, because the district court, by the way, found there was no law enforcement justification for collecting the attorney-client videos. That finding's already been made. But even if they had one, if they collected them and then kept them and accessed them for a non-legitimate purpose, became privy to them for a non-legitimate purpose, the district court has held that that satisfies that element of Schillinger as well. Thank you, counsel. Thank you. Appreciate the arguments this morning. Case will be submitted.